IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY BOOTH, | ) | CASE NO. 1:17 CV 426 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Jeremy Booth, for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated March 2, 2017.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**Facts**

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Booth who was 35 years old at the time of the administrative hearing,[11] is a high school graduate with one year of college.[12] He lives with his mother.[13] His past relevant employment history includes work as a carpenter and general laborer.[14]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Booth had severe impairments consisting of post left L5-S1 hemilaminectomry and discectomy, post-op changes with mild epidural granulation tissues without evidence of recurrent disc protrusion, mild to moderate bony foraminal narrowing

---

[6] ECF # 11.

[7] ECF # 16 (Commissioner's brief); ECF # 13 (Booth's brief).

[8] ECF # 16-1 (Commissioner's charts); ECF # 13-1 (Booth's charts).

[9] ECF # 12 (Booth's fact sheet).

[10] ECF # 20.

[11] ECF # 12 at 1.

[12] *Id*.

[13] ECF # 10, Transcript ("Tr.") at 76-77.

[14] *Id*. at 60.

at L5-S1, obesity and depression (20 CFR 404.1520(c) and 416.920(c))).[15] The ALJ made the following finding regarding Booth's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry 10 pounds occasionally and less that 10 pounds frequently, sit six hours in an eight hour workday and stand and walk two hours in an eight hour workday. He can push and pull the same as that for lift and carry. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl but never climb ladders or scaffolds. He must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle. In addition, the claimant can have frequent exposure to humidity and wetness, extreme cold and heat, and vibration. Furthermore, he must be limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work) as well as limited to simple, work-related decisions.[16]

Given that residual functional capacity, the ALJ found Booth incapable of performing his past relevant work as carpenter and general laborer.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Booth could perform.[18] The ALJ, therefore, found Booth not under a disability.[19]

---

[15] *Id*. at 50.

[16] *Id.* at 54.

[17] *Id*. at 60.

[18] *Id.* at 61.

[19] *Id*. at 62.

-3-

**B.	Issues on judicial review**

Booth asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Booth presents the following issue for judicial review:

- Whether the ALJ found that Mr. Booth retained the residual functional capacity for a range of sedentary work.[20]

The Court recommends that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

# Analysis

**A.	Applicable legal principles**

*1.	Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[20] ECF # 13 at 1.

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.  *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[24] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[25]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[26]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[27]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[28] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability"

---

[25] *Id.* at 34484.

[26] 20 C.F.R. § 416.929(c)(2).

[27] *Swain*, 297 F. Supp. 2d at 988-89.

[28] 20 C.F.R. § 404.1529(c)(3).

arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[29]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[30] A court may not disturb the ALJ's credibility determination absent compelling reason.[31]

---

[29] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[30] *Buxton*, 246 F.3d at 773.

[31] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

**B.	Recommendation**

This matter is essentially a challenge to the ALJ's finding that Booth was not fully credible as to his complaints of disabling pain.[32] The ALJ recognized that Booth underwent lumbar spine surgery in July 2014, or about six months after initially complaining of back pain, but then concluded that his post-surgical treatment had been conservative, mostly consisting of only prescribed pain medication and an exercise plan.[33]

For his part, Booth argues that in addition to his own consistent statements of disabling pain,[34] which he maintains grew worse subsequent to his surgery,[35] his assertions of pain were supported by the 2016 functional opinion of Dr. Avi Marocco, M.D., his primary care physician.[36] That opinion stated that Booth's severe pain would interfere with his concentration and ability to stay on task, requiring Booth to take six to seven hours of additional rest breaks during an eight-hour work day.[37] Booth further contends that his

---

[32] Tr. at 57.

[33] *Id*. at 57-59.

[34] ECF # 13 at 13 (citing record).

[35] *Id*.

[36] *Id.*

[37] Tr. at 521-22.

complaints of pain are supported by the opinion and record of Dr. Marocco,[38] which opinion he argues, the ALJ improperly found was entitled to only some weight.[39]

The ALJ independently examined both Booth's own claims of pain and the opinion of Dr. Marocco.

As to Booth's own allegation, the ALJ initially noted that Booth's medical impairments could reasonably be expected to cause the alleged symptoms, but that Booth's claims as to intensity, persistence and limiting effect were not entirely credible. To that point, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. In reaching this decision, the undersigned notes that the claimant stated he has difficulty standing, walking, sitting and lifting due to back pain. The undersigned also notes that the claimant alleged problems with depression due to pain, and he has difficulty being around people. While the record showed that the claimant experienced some physical limitations and symptoms from these conditions, the record revealed routine and conservative nature following the claimant's surgery. The claimant's primary care and treating physicians continued to recommend pain medication and exercise as his primary treatment plan (Ex. 9F, 11-12F, 15-16F). The claimant did not report any side effects from medication that would result in debilitating limitations and did not require use of any assistive device for standing, walking, or sitting. Furthermore, in terms of the claimant's alleged limitations from depression, the record reflected minimal treatment and significant gaps in allegations of symptoms (Ex. 13-15F). The record also revealed no recommendation or treatment plan involving counseling services or referrals to mental health specialists. His treatment plan only included medication, which he testified at hearing helped

---

[38] ECF # 13 at 14.

[39] *Id*. at 58.

alleviate his depressive symptoms and does not interfere with his activities of daily living (Hearing Record, 12/ 18/2015, 10:48:56AM to 10:51:24AM).

Therefore, the record does not establish limitation of the level and severity as the claimant alleged. As such, the undersigned accords only partially credibility to the claimant's statements regarding the intensity, persistence , and limiting effects of his symptoms and find that he remains capable of performing work within the residual functional capacity defined above.[40]

As to the functional opinion of Dr. Marocco, the ALJ noted first that although Dr. Marocco did express the opinion, noted earlier, concerning how pain would effect Booth's concentration and attention, Dr. Marocco also opined as to other work-related functions that Booth could perform without limitation:

However, Dr. Marocco further opined that the claimant could perform other functions with no limitations, such as follow work rules, use judgment, respond appropriately to changes in routine settings, deal with the public, relate to co-workers, and interact with supervisors. He could also function independently without redirection, work without being distracted or being distracting, deal with work stress, and complete a normal workday and workweek without interruption from psychologically based symptoms.[41]

In regards to Dr. Marocco's opinion as to limitations in the area of concentration and attention due to pain, the ALJ offered the following extended discussion as to why that opinion was not entitled to anything more than some weight:

Dr. Marocco's MSS is not an actual evaluation of the claimant's mental health, but rather, he assessed the claimant's ability to maintain concentration, persistence and pace due to pain. The undersigned finds that his opinion is inconsistent with and not supported by treatment records. The undersigned finds that treatment records failed to establish limiting effects of such a degree that the claimant could rarely maintain attention and concentration or rarely

---

[40] Tr. at 57.

[41] *Id*. at 58.

-10-

maintain regular attendance and be punctual. Treatment records contained no such restrictions placed on the claimant (Ex. 15F). In fact, progress notes from office visits with Dr. Marocco indicated no observations of a depressed mood, problems with cooperation, attention, focus, grooming, orientation, or effect, and made no indication the claimant exhibited abnormal or psychotic thoughts or other symptoms. Additionally and more significantly, physical examination notes consistently described the claimant as well appearing, alert, and in no acute distress, all of which are inconsistent with debilitating pain symptoms (Ex. 15F). There is no evidence of debilitating pain that alone would cause limitations with the claimant's concentration, persistence and pace. Moreover, the undersigned finds that the combined effects of the claimant's alleged pain and depression, while they would cause functional limitations, would not preclude the claimant from performing tasks within the residual functional capacity defined in this decision. Accordingly, while Dr. Marocco is a treating source, the undersigned gives his opinion some weight rather than controlling weight to the extent the record supports the existence of some back pain and that the claimant's mental symptoms from depression are not as limiting as alleged. However, treatment records do not support Dr. Marocco's opinion regarding the degree of the claimant's pain and that it would interfere with his attendance.

No other treating source offered an opinion regarding the claimant's work-related limitations, or suggested that the claimant has disabling impairments.[42]

Moreover, the ALJ took note of Booth's testimony at the hearing - extending it "maximum credibility" - to the effect that it "contained evidence of back pain treated with injections and occasional abnormal gait."[43] Thus, the ALJ found that Booth was "more limited [than was found by the State agency consultants], primarily in his ability to stand and walk."[44]

---

[42] *Id.*

[43] *Id.* at 59.

[44] *Id.*

The ALJ then concluded this extensive analysis as follows:

> In sum, the undersigned finds that the claimant's subjective complaints and alleged limitations are not fully persuasive, and the medical evidence does not corroborate the claimant's allegations of symptoms attributed to his impairments to an extent that would preclude the performance of work with the restrictions stated above. The objective evidence demonstrated that the claimant's severe impairments do cause some limitations, yet those impairments have been considered and accommodated by the residual functional capacity set forth in this decision. In addition, the claimant has retained his ability to perform activities of daily living, social functioning, and concentration, persistence, and pace. Accordingly, the undersigned finds that the above residual functional capacity assessment is supported by the objective clinical findings in the record and in viewing the record in the light most favorable to the claimant.[45]

The question of disabling pain is here is considered by the ALJ in combination with the effects of depression, and that combination is conceded by the ALJ to have an effect on Booth's functional capacity. Indeed, as detailed above, the ALJ found that "the combined effects of the claimant's alleged pain and depression, while they would cause functional limitations, would not preclude the claimant from performing tasks within the residual functional capacity defined in this decision."[46]

Further, as to the issue of pain itself, that the ALJ also explicitly concedes that "the record supports the existence of some back pain," although not to the extent as would support the limitations alleged.[47] This is cited in connection with the determination to accord some weight to the functional opinion of Dr. Marocco.

---

[45] *Id.*

[46] *Id.* at 58.

[47] *Id.*

Moreover, the ALJ made a point to state in the opinion to give "maximum credibility to the claimant's hearing testimony and treatment notes that contained evidence of back pain ...."[48] This finding, according to the ALJ, reduced the weight given to the functional opinions of the State agency consultants, especially as to Booth's capacity to stand and walk.[49]

So understood, the ALJ's opinion itself makes plain that the issue in this case is extremely narrow, focused solely on whether there is support for not fully crediting the allegation that pain would have the functional effect of limiting Booth's ability to fully concentrate for an eight-hour work day or maintain regular attendance.

In that regard, the evidence cited by the ALJ consists of the following:

- "routine and conservative treatment" for pain "following the claimant's surgery" by the primary care and treating physicians;[50]
- no record of any time restriction on therapy or other activities by Dr. Marocco in his treatment notes;[51]
- "no observations" in Dr. Marocco's progress notes of "problems with cooperation, attention, focus, grooming, orientation , or effect;[52]
- "physical examination notes consistently describe claimant as well appearing, alert, and in no acute distress, all of which are inconsistent with debilitating pain symptoms;[53]

---

[48] *Id*.

[49] *Id.*

[50] *Id*. at 57.

[51] *Id.*

[52] *Id*.

[53] *Id*.

- "the claimant has retained her [*sic*] ability to perform activities of daily living, social functioning and concentration, persistence and pace."[54]

While acknowledging that things like activities of daily living cannot be too strongly used as proof of a claimant being able to function in the work setting, the preceding five reasons, taken together with the ALJ's careful review of the entire record, including the hearing testimony, provide substantial evidence in support of the ALJ's decision in this matter. In addition, as is also reflected above, the ALJ's decision here is fully capable of meaningful judicial review, inasmuch as it carefully sets out a bridge between the facts, the applicable law, and the conclusion. Moreover, the ALJ's reasoning here was consonant with the applicable law and regulations governing judicial review of the Commissioner's decisions as to a claimant's credibility and opinions from treating sources.

## Conclusion

For the reasons stated, I recommend finding that substantial evidence supports the Commissioner's decision denying benefits to Jeremy Booth, and that this decision should here be affirmed.

Dated: December 14, 2017                s/ William H. Baughman, Jr.
                                        United States Magistrate Judge

---

[54] *Id.*

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[55]

---

[55] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).